UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ELIJAH L. S.,                                               Case No. 3:20-cv-01089-AR

             Plaintiff,                              **OPINION AND ORDER**

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

             Defendant.

_____

**ARMISTEAD, Magistrate Judge**

      In this judicial review of the Commissioner's final decision denying Social Security

benefits, plaintiff Elijah L. S. (his last name omitted for privacy) contends that the

Administrative Law Judge (ALJ) failed to provide specific, clear and convincing reasons for

discounting his subjective symptom testimony. In plaintiff's view, the ALJ erred in finding that

he has undertaken only conservative treatment for his mental health impairments, has been

noncompliant with medications, made inconsistent statements, and that the objective medical

Page  1  – OPINION AND ORDER

evidence fails to support the severity of his symptoms. (Pl. Br. 8-9, ECF No. 26.) Plaintiff also

argues that the ALJ erred in analyzing the opinion of Lindsay Heydenrych, Psy. D., who opined

that he would have significant difficulties functioning in a competitive work environment. That

is because, plaintiff asserts, the ALJ failed to discuss why the opinion was not persuasive, and

the ALJ's stated reasons (the opinion was inconsistent with examination findings, he has no

deficits in cognitive functioning, and his treatment has been conservative) are not supported by

substantial evidence. (*Id.* at 13-15.) As explained below, the court agrees with plaintiff.

Consequently, the Commissioner's decision is reversed and remanded for an immediate

calculation and award of benefits.[1]

## BACKGROUND AND ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) and Title XVI

Supplemental Security Income (SSI), alleging disability that began on July 1, 2016. (Tr. 100.)

His claims, which were denied initially and upon reconsideration, were considered by the ALJ at

a hearing on August 8, 2019. In denying plaintiff's applications for disability benefits, the ALJ

followed the five-step sequential evaluation process.[2] The ALJ found that plaintiff meets the

insured status requirements through June 30, 2021, and at step one, has not engaged in

substantial gainful employment since the amended onset date. (Tr. 102.) At step two, the ALJ

---

[1]     This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have
consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28
U.S.C. § 636(c).

[2]     To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20
C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not
disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481
F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

determined that he had the following severe impairments: borderline personality disorder, post-traumatic stress disorder (PTSD), and affective disorder. (Tr. 103.) At step three, the ALJ found that plaintiff does not have an impairment, or combination of impairments, that meet or medically equal a listed impairment.

Particularly relevant to the court's review is the ALJ's assessment of plaintiff's residual functional capacity (RFC). 20 C.F.R. §§ 404.1545, 416.945. The ALJ determined that plaintiff can perform a full range of work at all exertional levels and has the following nonexertional limitations: he can perform simple, routine, and repetitive tasks; can have no contact with the general public, but occasional contact with coworkers; and can perform work involving only occasional changes in the work routine and setting. (Tr. 105). The ALJ found plaintiff has no relevant past work at step four. (Tr. 109.) The ALJ determined at step five, that given his age, education, work experience, and RFC, plaintiff can perform the representative occupations of janitor, hand packager, and electronics worker. (Tr. 110.)

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

**A.**      ***The ALJ Failed to Identify Specific, Clear and Convincing Reasons to Discount Plaintiff's Testimony***

As for the credibility of a claimant's testimony about subjective pain or symptoms, when an ALJ "determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 416.929. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo v. Berryhill*, 871 F.3d 664, 678-79 (9th Cir. 2017). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter*, 806 F.3d at 493.

Plaintiff contends that he cannot engage in fulltime, competitive employment because of a variety of mental health conditions, including diagnoses of borderline personality disorder, bipolar disorder, and PTSD. (Tr. 285.) Plaintiff alleges that his depression, anxiety, and panic attacks are exacerbated by stress. (Tr. 105.) Plaintiff has a history of cutting and thoughts of self-harm. (Tr. 80.) Plaintiff described that he struggles with constant negative thoughts, feelings of worthlessness, and suicidal ideation, and that his depressive episodes occur about once a month. (Tr. 286.) During depressive episodes, plaintiff struggles to shower, get out of bed, or brush his teeth. (Tr. 287.) During manic episodes, which occur every other month, plaintiff has difficulty controlling his impulsivity and his mood can switch rapidly from crying to laughing. (Tr. 287.) Plaintiff has been engaged in counseling since 2015 and has been prescribed various medications

for his conditions, including lithium, depakote, clonidine, risperidone, escitalopram, oxcarbenzapine, venlafaxine, lamotrigine, bupropion, aripirazole, and alprazolam. (Tr. 356, 551, 696, 864-65, 1033.)

At the hearing, plaintiff reported that he has been working as a personal shopper at a grocery store three times a week, totaling 12 to 18 hours. Plaintiff explained that he cannot sustain fulltime work because the "stress starts to build" and he calls out sick. (Tr. 121.) Plaintiff explained that he typically calls out sick three times per month due to his depression and panic attacks. (Tr. 122.) Plaintiff explained that he cannot work fulltime because he cannot regulate stress on the job or in his personal life, which can lead to depressive spells, anxiety, panic attacks, and disassociation. (Tr. 126-27.) Plaintiff testified that he has been employed at the grocery store for more than six months because he has an understanding and accommodating supervisor. (Tr. 132.) Plaintiff stated that panic attacks make it difficult to communicate, process information, be aware of his surroundings, and that they slow his reaction time. (Tr. 144-45.)

Plaintiff challenges the ALJ's assessment of his subjective symptom testimony.[3] The ALJ discounted plaintiff's subjective symptom testimony because: (1) his treatment has been conservative; (2) he has been, at times, noncompliant with medication; (3) he made inconsistent statements; and (4) the severity of his impairments is not fully supported by objective medical evidence. Tr. 104-08. As discussed below, the ALJ's reasoning is belied by the record and appears to misunderstand plaintiff's mental health impairments.

\ \ \ \ \

1.      conservative treatment

_____

[3]      There is no evidence of malingering.

Although the ALJ's summary of plaintiff's treatment is largely accurate, the conclusions

and inferences the ALJ draws are undermined when the record is viewed as a whole. For

example, the ALJ acknowledged that plaintiff has engaged in ongoing therapy for years with

medication management through Cascadia Behavior Healthcare. (Tr. 105.) The ALJ detailed that

after discontinuing medication in February 2017, plaintiff reported to the emergency room for

suicidality two months later, which resulted in enrollment in an intensive outpatient program

from April 29 to June 29, 2017. (Tr. 613.) Just a few months later, in September 2017, plaintiff

again reported to the emergency room for suicidal ideation, hallucinations, and dissociative

feelings. (Tr. 106, 598.) It was again recommended that plaintiff enroll in an intensive outpatient

program/Dialectical Behavior Therapy Program, which was, however, not authorized by

insurance. (Tr. 598, 886.)

The ALJ noted that "there was no evidence that [plaintiff] engaged in aggressive

treatment through the date of adjudication," yet discussed records showing that plaintiff

continued with therapy and medication management. (Tr. 106.) The ALJ noted that in March

2018, plaintiff reported to his therapist increased suicidal ideation, and that he had discontinued

his medications, but declined emergency treatment. (Tr. 106, 1036.) At a follow up two weeks

later with his psychiatric specialist, Sandra Ford, P.A., plaintiff agreed to restart lithium and

aripiprazole. (Tr. 1036.) The ALJ found that in the following months, plaintiff reported improved

symptoms as medication compliance improved and he processed issues related to gender

identity. (Tr. 106, 1000, 1027.) But contemporaneous treatment notes from April 2018 reveal

that although plaintiff no longer felt he was a danger to himself, his therapist assessed his risk as

moderate and they reviewed his safety plan. (Tr. 1027.) In August 2018, plaintiff's medication

compliance was improving, and his mood was stable. (Tr. 1128-29.)

The ALJ discussed that in January 2019, plaintiff reported to Ford that he had stopped taking medication seven months earlier and was seeking only medications for anxiety, and that there was no evidence of decompensation. (Tr. 107.) Plaintiff reported to Ford that he was feeling "functional" and Ford prescribed clonidine. (Tr. 107.) In March 2019, plaintiff reported to Ford better medication compliance, limited side effects, and that he was engaged with therapy. (Tr. 109.) Even so, by late May 2019, plaintiff was reporting deep depression, increased anxiety, frequent panic attacks, feelings of self-loathing, challenges taking medication, and difficulty with self-care. (Tr. 1049-51.)

The ALJ summarized plaintiff's years of therapy, medication management, and intensive outpatient treatment and concluded it "consisted primarily of conservative treatment" presumably because he "had no inpatient treatment." (Tr. 107.) The ALJ's characterization of plaintiff's mental health treatment as "conservative" is wrong. Many district courts within the Ninth Circuit have held that the prescription of psychotropic medications is not "conservative treatment" as used in the social security context. *See, e.g.*, *Sandberg v. Comm'r Soc. Sec. Admin.*, Case No. 3:14-cv-00810-ST, 2015 WL 2449745, at *6 (D. Or. May 22, 2015) ("Prescription medicine such as Lithium is certainly not conservative in the same manner as over-the-counter pain relievers."); *Simington v. Astrue*, Case No. 09-670-TC, 2011 WL 1261298, at *7 (D. Or. Feb. 23, 2011), *adopted*, 2011 WL 1225581 (D. Or. Mar. 29, 2011) (noting prescribing medications, including lithium, depakote, and lamotrigine for treatment of bipolar disorder, anxiety, depression, and agoraphobia was not conservative treatment); *Gia M. P. v. Comm'r Soc. Sec. Admin.*, Case No. 6:17-cv-01825-MA, 2018 WL 403 WL 4031606, at *6 (D. Or. Aug. 23, 2018) (holding prescription medications and therapy were not conservative treatment); *Benjamin v. Colvin*, Case No. ED CV 13-2343-E, 2014 WL 4437288, at *3 (C.D. Cal. Sept. 4, 2014)

("Courts specifically have recognized that the prescription of Lithium, Seroquel, and Zyprexa, connotes mental health treatment which is not 'conservative,' within the meaning of social security jurisprudence." (collecting cases)).

And the lack of inpatient hospitalization is not evidence of conservative treatment in the context of complex mental health disorders. *Choat v. Berryhill*, Case No. 6:17-cv-00617-HZ, 2018 WL 2048332, at *5 (D. Or. Apr. 30, 2018) (so stating and collecting cases); *Sandberg*, 2015 WL 2449745, at *6 ("[N]o precedent suggests that a cocktail of prescription drugs is conservative treatment simply because the patient has not checked into a mental health facility."); *Tammy O. v. Comm'r Soc. Sec. Admin.*, Case No. 3:17-cv-774-SI, 2018 WL 3090196, at *8 (D. Or. June 20, 2018) (finding lack of inpatient hospitalizations did not contradict claimant's testimony about severity of mental health symptoms); *Gia M. P.*, 2018 WL 4031606, at *6 ("a claimant does not have to undergo inpatient hospitalization to be disabled"). (simplified). Given this well-developed body of law, the ALJ's findings here are erroneous, are unsupported by substantial evidence, and fail to provide a clear and convincing reason to discount plaintiff's subjective symptom testimony.

The court addresses the Commissioner's response to the ALJ's first rationale. In plaintiff's briefing, he challenges the ALJ's rejection of his subjective symptom testimony as conservative, contending that his treatment has been "hardly run-of-the-mill." (Pl.'s Op. Br. at 7, ECF No. 26.) The Commissioner responds that plaintiff "merely offers a competing interpretation of the evidence." (Def.'s Br. at 3, ECF No. 27.) No recent case law supports the ALJ's erroneous finding that plaintiff's mental health treatment was conservative, nor does the Commissioner identify any. The court readily rejects the Commissioner's unsupported contention.

**2.      medication noncompliance**

An ALJ may rely on a claimant's failure to follow a prescribed course of treatment to discount testimony about the intensity or persistence of symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). But when a claimant offers an adequate explanation for the noncompliance, such noncompliance is excusable and fails to supply a clear and convincing reason to discredit testimony. *Jill C. v. Berryhill*, Case No. 3:17-cv-1892-SI, 2018 WL 6308728, at *4 (D. Or. Dec. 3, 2018); *Gamble v. Chater*, 68 F.3d 319, 320-21 (9th Cir. 1995) (noting inability to afford treatment excuses noncompliance with treatment). And the Ninth Circuit "disfavors faulting a claimant for failing to comply with treatment when a mental impairment causes the non-compliance." *Jill C.*, 2018 WL 6308728, at *4 (citing *Regennitter v. Comm. Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.")).

The ALJ discounted plaintiff's subjective symptoms because he had "instances of treatment noncompliance" that contributed to fluctuations in symptoms. (Tr. 107.) The ALJ discussed several occasions of plaintiff discontinuing medications and not decompensating, or that his symptoms improved when medications were resumed. (Tr. 106-07.) Controlling Ninth Circuit precedent recognizes that in the context of mental health impairments "[c]ycles of improvement and debilitating symptoms are a common occurrence" and that ALJ may not pick out "isolated instances of improvement" to discredit a claimant. *Garrison*, 759 F.3d at 1017; *Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016) ("It is the nature of bipolar disorder that symptoms wax and wane over time.").

The record shows that plaintiff reported intolerable side effects to some medications,

Page 9  – OPINION AND ORDER

could not afford medication, and has not undertaken some recommended treatments because they were not covered by insurance. (Tr. 547, 556, 886, 890, 1099-1100.) Contrary to the Commissioner's suggestion, there also is evidence that plaintiff's medication noncompliance is a facet of his mental impairments. (Tr. 365-66 ("I am using mania to break up the depression[,]" 914 (reporting extreme depression and that taking medication was difficult), 962, 1000-01, 1033.) And the longitudinal history shows cycles of improvement invariably followed by cycles of worsening symptoms. (*Compare* Tr. 1100 (refusing to restart lithium and needing only antianxiety medication on 1/9/2019) *with* Tr. 1049 (reporting deep depression and needing to force himself to take mental health medication on 5/29/2019.)) For all these reasons, the ALJ's reliance on plaintiff's medication noncompliance to discount his subjective symptom testimony is not supported by substantial evidence and fails to provide a clear and convincing reason to discount it.

3.      **Inconsistent statements in the treatment record**

"An ALJ may consider inconsistent statements by a claimant in assessing her credibility." *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017). "A single discrepancy fails, however, to justify the wholesale dismissal of a claimant's testimony." *Id.* at 906-07. The ALJ found that plaintiff's statement that he was "uniquely unfit to work" inconsistent with his statement that he is "reliable and a hard worker." (Tr. 107.) The ALJ's cited inconsistency is not supported by substantial evidence and is not a reasonable interpretation of the record. The treatment record cited by the ALJ states that plaintiff informed his therapist that he was a reliable and a hard worker and that plaintiff qualified his statement by adding "when I can function." (Tr. 368.) Thus, when read in context, the statement is not inherently contradictory. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (rejecting ALJ's finding that claimant's statements of his

Page 10 – OPINION AND ORDER

abilities and activities were inconsistent). Although the Commissioner attempts to shore up the

ALJ's reasoning by citing other inconsistencies, those are not relied upon by the ALJ, and cannot

provide a basis for discounting plaintiff's subjective statements. *Connett v. Barnhart*, 340 F.3d

871, 874 (9th Cir. 2003) (stating the court "is constrained to review the reasons the ALJ

asserts").[4] Thus, the ALJ's finding is not supported by substantial evidence.

### 4.    Inconsistent with medical records

The ALJ discounted plaintiff's subjective symptom testimony based on alleged

inconsistencies with the medical record. Inconsistency with the medical record can provide a

clear and convincing basis for discounting a claimant's symptoms, so long as it is not the sole

basis for doing so. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). In the

decision, the ALJ cited a single treatment note from Ford and determined that plaintiff's alleged

"cognitive difficulties were not evident on objective examination." (Tr. 107, 1100.) Plaintiff is

not asserting disability based on difficulties with cognitive functioning, and thus the ALJ's

finding is misplaced. *Ghanim*, 763 F.3d at 1164 (noting that "observations of cognitive

functioning during therapy sessions [did] not contradict [the plaintiff's] reported symptoms of

depression and social anxiety"). And, as noted above, the ALJ may not cherry-pick isolated

instances of improved psychological symptoms to discredit plaintiff. *Garrison*, 759 F.3d at 1017.

The ALJ also found that there was no objective documentation of plaintiff's dissociative

episodes. (Tr. 107.) The record shows that plaintiff complained of dissociative symptoms several

---

[4]      Moreover, the Commissioner's *post-hoc* alleged inconsistencies (Def.'s Br. at 5) are
undercut by Dr. Heydenrych's findings. Tr. 874. Dr. Heydenrych found that, although plaintiff's
"reports may appear magnified or excessive, they are likely accurate indicators of [his]
perception of [his] experiences" and that his test results and documented history "meet the
diagnostic criteria for Boderline Personality Disorder, with significant interference to [his]
functioning." Tr. 874.

times. (Tr. 437, 892-95, 908-09, 1135.) It is difficult for the court to imagine what additional

objective documentation would be required here given the nature of such symptoms. *See Sara J.*

*v. Comm's Soc. Sec. Admin.*, Case no. 2:18-cv-00322-SMJ, 2020 WL 1433574, at *5-6 (E.D.

Wash. Mar. 23, 2020) (noting that claimant's panic disorder would have to be based on self-

reports); *Pouline v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987 (observing that, "unlike a broken

arm, a mind cannot be x-rayed"). The court concludes that the ALJ's fourth rationale is not

supported by substantial evidence.

In summary, because none of the ALJ's reasons for discounting the plaintiff's subjective

symptom testimony are supported by substantial evidence, the ALJ has committed harmful error.

**B.      *The ALJ Erred in Evaluating the Opinion Evidence of Dr. Heydenrych***

For disability claims filed on or after March 27, 2017, new regulations for evaluating

medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical*

*Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan

18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but

instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The

new regulations eliminate the hierarchy of medical opinions and state that the agency does not

defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v.*

*Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly

irreconcilable with our caselaw according special deference to the opinions of treating and

examining physicians on account of their relationship with the claimant."). Under the new

regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions

in determining whether an opinion is persuasive. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability is determined by whether the medical source presents explanations and objective

medical evidence to support their opinions. *Id.* §§ 404.1520c(c)(1), 416c(c)(1). Consistency is

determined by how consistent the opinion is with evidence from other medical and nonmedical

sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking

at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the

claimant's examinations, and whether there is an examining relationship. *Id.* §§ 404.1520c(c)(3),

416c(c)(3). An ALJ is not, however, required to explain how she considered those secondary

medical factors unless she finds that two or more medical opinions about the same issue are

equally well-supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(2)-

(3), 416c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the

medical opinions" and "explain how [they] considered the supportability and consistency

factors." *Id.* §§ 404.1520c(c)(b), 416c(b). The court must, moreover, continue to consider

whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g);

*Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or

treating doctor's opinion as unsupported or inconsistent without providing an explanation

supported by substantial evidence.").[5] *Id.*

Plaintiff argues that the ALJ improperly found the opinion of Dr. Heydenrych

unpersuasive. Dr. Heydenrych conducted a psychodiagnostic evaluation of plaintiff on October

24, 2017, including a clinical interview, record review, and extensive testing. (Tr. 869 (reflecting

---

[5]     Under the new framework, the ALJ is no longer required to "provide specific and
legitimate reasons for rejecting an examining doctor's opinion;" rather, the ALJ's reasons must
"simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

testing included Mini-Mental Status Examination, 2nd ed., Brief Version (MMSE-2 BV); Work

Health Organization Disability Assessment Schedule 2.0 (WHODAS); Posttraumatic Checklist

for the DSM-5 (PLC-5); Patient Health Questionnaires (GAD 7, PHQ-9, and MDQ); and Millon

Clinical Multiaxial Inventory 3rd ed. (MCMI-III).)

Dr. Heydenrych's report discussed plaintiff's history of unstable and traumatic events,

resulting in anxiety, depression, and emotional instability, with significant mood dysregulation,

with periods of major depression, mania, and hypomania. (Tr. 870-71.) Dr. Heydenrych stated

that plaintiff reported "chronic feelings of emptiness, unstable self-image, and intense periods of

anger," gaps in memory where he dissociates, and difficulties with interpersonal relationships,

recurrent suicidal threats, and impulsivity. (Tr. 874.) Plaintiff relayed to Dr. Heydenrych that he

struggles frequent suicidal ideation, without specific intent or plan. (Tr. 869.) Dr. Heydenrych

observed that plaintiff presented with a variable and sometimes incongruent affect, and estimated

plaintiff has high average intelligence. (Tr. 869.)

On testing, plaintiff was oriented to person, place, day, and purpose, with logical thought

process, content was relevant and normal, without evidence of a thought disorder, active

hallucinations, or delusions. (Tr. 869.) The results of the MMSE-2 showed no significant

difficulties performing basic mental activities – he could recall three unrelated words after a brief

delay with distraction and could identify the city, county, building, and floor. (Tr. 869.) On the

WHODAS, which asks about difficulties stemming from mental and physical health conditions,

plaintiff reported "significant difficulty across multiple areas of daily functioning," such as

understanding what people say, staying by himself, making friends, doing work tasks well, and

feeling emotionally affected by health conditions. (Tr. 869-70.)

Based on Dr. Heydenrych's interview, record review, and testing, she diagnosed PTSD,

Page 14 – OPINION AND ORDER

Bipolar I Disorder, and Borderline Personality Disorder. (Tr. 875.) Dr. Heydenrych opined that

plaintiff has "severe functional interference" from his diagnoses, with severe difficulty

organizing his behavior to adequately perform work. (Tr. 875.) Dr. Heydenrych noted that

plaintiff's ability to perform even rote, repetitive tasks would be "severely hindered by [his]

personality issues combined with [his] persistent anxiety and mood instability" and that

"[b]ecause of intense emotional reactivity, depression, and anxiety, [he] would have significant

difficulties functioning in a competitive work environment and completing a normal work-day or

work-week." (Tr. 875.)

In the decision, the ALJ determined that Dr. Heydenrych's opinion was well reasoned

and that she discussed how plaintiff's symptoms could cause significant interference with his

ability to maintain employment. (Tr. 108.) Yet the ALJ found that Dr. Heydenrych's opinion was

not supported by her own examination findings because plaintiff "demonstrated normal cognitive

functioning." (Tr. 108.) This rationale is an insufficient explanation for discounting Dr.

Heydenrych's opinion. As plaintiff correctly contends, his "cognition is not at issue." (Pl.'s Br. at

15.) Dr. Heydenrych opined that plaintiff's barriers to employment are his intense emotional

reactivity, depression, anxiety, and poor coping skills – not any cognitive limitations. *See*

*Ghanim*, 763 F.3d at 1164 (holding ALJ erred in rejecting physicians' opinions based on intact

cognitive functioning where claimant testified that "nightmares, insomnia, social anxiety, and

depression—not any cognitive impairments—caused him difficulty"). When considered in the

context of Dr. Heydenrych's overall opinion, the ALJ's first reason is not supported by supported

by substantial evidence.

Second, the ALJ found Dr. Heydenrych's opinion unpersuasive because it was

inconsistent with plaintiff's record of conservative treatment. Third, the ALJ found Dr.

Page 15 – OPINION AND ORDER

Heydenrych's opinion inconsistent with plaintiff's medication noncompliance without repeated

recurrences of symptom exacerbations or episodes of decompensation. (Tr. 108.) These reasons

are largely repackaged rationales supplied by the ALJ for discounting plaintiff's testimony. As

explained above, plaintiff's treatment has not been "conservative," the reasons for his medication

noncompliance are complex, and the ALJ's finding that he did not experience symptom

exacerbations when off his medications is unsupported by substantial evidence. It is clear to this

court that the ALJ failed to consider that plaintiff's symptoms waxed and waned and that periods

of improvement were followed by debilitating symptoms. *Holohan v. Massanari*, 246 F.3d 1195,

1205 (9th Cir. 2001) ("[S]tatements must be read in context of the overall diagnostic picture he

draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some

improvement does not mean that the person's impairments no longer seriously affect her ability

to function in a workplace."). Accordingly, the ALJ may not reasonably rely on those

explanations to find Dr. Heydenrych's opinion unpersuasive.

Fourth, the ALJ found Dr. Heydenrych's opinion unpersuasive because it is based on

plaintiff's subjective complaints. The Ninth Circuit has cautioned that rejecting physician's

opinions based on "self-reports does not apply in the same manner to opinions regarding mental

illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). "[A]lthough psychiatric

evaluations often appear subjective when compared to evaluation in other medical fields,

psychiatric diagnoses depend in part on the patient's self-report, as well as on the clinician's

observations of the patient, because that is the nature of psychiatry." *Nathan B. v. Saul*, Case No.

2:18-cv-01408-SB, 2019 WL 4884223, at *8 (D. Or. Oct. 3, 2019) (internal quotation omitted).

Here, Dr. Heydenrych premised her opinions on her clinical interview and extensive testing,

which are "objective measures [that] cannot be discounted as a 'self-report.'" *Buck*, 869 F.3d at

Page 16 – OPINION AND ORDER

1049. The ALJ does not explain how Dr. Heydenrych's opinion relied more heavily on plaintiff's

self-reports than her interview and test results, and substantial evidence does not support such a

conclusion. *Ghanim*, 763 F.3d at 1162 ("[W]hen an opinion is not more heavily based on a

patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the

opinion.").

Additionally, because Dr. Heydenrych did not disbelieve plaintiff's description of his

symptoms, the ALJ unreasonably relied on this basis to find the opinion unpersuasive. *See Ryan*

*v. Comm'r Soc. Sec. Admin.*, 528 F.3d 1194, 1200 (9th Cir. 2008) (holding that ALJ errs in

rejecting physician's opinion because it is based on claimant's subjective self-reports where

physician has not discredited those reports); *see also* Tr. 869 (Dr. Heydenrych noting that she did

not find any "major contradictions" in plaintiff's reporting, observing plaintiff's "best effort" on

testing, and considering the results valid).

Finally, the ALJ found Dr. Heydenrych's opinion inconsistent with other objective

examination findings and the totality of claimant's treatment notes. The ALJ did not identify

which other examination findings or treatment notes allegedly contradict Dr. Heydenrych's

opinion and thus fails to provide an adequate explanation for finding her opinion unpersuasive.

*Garrison*, 759 F.3d at 1012. The court's review of the record as a whole reveals that that

rationale is not supported by substantial evidence. Dr. Heydenrych's opinion is echoed by

Ford's, who submitted a medical source statement dated June 18, 2019, and opined that

plaintiff's anxiety, depression, and PTSD cause many marked and extreme limitations which

impair his ability to maintain regular attendance, and that he would miss work more than two

days per month. (Tr. 1144-46.)

In summary, the ALJ unreasonably concluded that Dr. Heydenrych's opinion is unsupported by her examination findings, conflicts with plaintiff's conservative treatment, and is based on plaintiff's testimony. As a result, substantial evidence does not support the ALJ's finding that Dr. Heydenrych's opinion was not persuasive, and the ALJ committed harmful error.

**C.     *Remedy***

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

The court concludes that each of the credit-as-true factors is satisfied here and that remanding for further proceedings would serve no useful purpose. Contrary to the Commissioner's contention, the opinion of agency physician Winifred Ju, Ph.D., does not create a conflict that needs to be resolved in this case. The ALJ found Dr. Ju's opinion persuasive over all other providers who treated or diagnosed plaintiff, all of whom opined that plaintiff suffers

Page  18  – OPINION AND ORDER

from severe depression, anxiety, PTSD, borderline personality disorder, and bipolar disorder and

that plaintiff cannot maintain competitive employment. (Tr. 1140, 1144.) The ALJ's analysis

displayed a fundamental misapprehension of the severe mental health impairments plaintiff

suffers. As discussed above, *none* of the ALJ's reasons for discounting plaintiff's testimony or

Dr. Heydenrych's opinion are supported by substantial evidence. Plaintiff testified that he cannot

work more than 18 hours per week and that he calls out sick three times per month. (Tr. 121.) Dr.

Heydenrych opined that plaintiff cannot sustain a full workday or full workweek due to his

symptoms. (Tr. 874-876.) If plaintiff's testimony and Dr. Heydenrych's opinion are credited-as-

true, they establish that plaintiff is disabled because the vocational expert testified that someone

who misses more than two days of work per month is unable to sustain competitive employment.

Tr. 141. Finally, the court has no "serious doubt" that plaintiff is disabled based on a review of

the record as whole. *Trevizo*, 871 F.3d at 683. Accordingly, an award of benefits is appropriate.

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and

REMANDS this case for an immediate calculation and award of benefits.

DATED December 22, 2022.

_____

/s/ Jeffrey Armistead

JEFFREY ARMISTEAD

United States Magistrate Judge

Page 19 – OPINION AND ORDER